IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RADIAL, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 25-585 |
| | : | |
| BATH & BODY WORKS DIRECT, | : | |
| INC., BATH & BODY WORKS GC, | : | |
| LLC. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                 **March 26, 2026**

Bath & Body Works Direct, Inc. and Bath & Body Works GC, LLC (collectively, "BBW")

and Radial, Inc. are counterparties to a long-running e-commerce logistics relationship. This

contract dispute arises out of the parties' written agreements governing fulfillment operations at

Radial's Locust Grove, Georgia facility (the "Atlanta Fulfillment Center") and order management

system (OMS) services. Radial challenges BBW's January 2025 termination notice and alleges

BBW is pursuing a competing OMS before the contractually agreed exclusive end date. BBW

counterclaims, alleging Radial wrongfully withheld BBW inventory and refused to give it back

absent a settlement agreement. BBW also alleges Radial is refusing to cooperate with a successor

OMS transition in violation of its contractual obligation. Before the Court are two motions. BBW

moves to dismiss Radial's amended complaint in its entirety. Radial moves to dismiss six of

BBW's counterclaims. For the reasons below, the Court grants BBW's motion in part and denies

it in part, and the Court grants Radial's motion in part and denies it in part.

**BACKGROUND**

Radial and BBW entered an e-commerce services agreement in 2015 (the "Agreement")

and later executed multiple addenda addressing, among other topics, (1) order fulfillment and

transportation from the Atlanta Fulfillment Center and (2) Radial's OMS services. Radial Am.

Compl. ¶¶ 3-5, Dkt. No. 13; BBW Am. Countercl. ¶¶ 19-22, Dkt. No. 26 (Civil Action No. 25-cv-2282). Radial alleges the Agreement contains service-level termination standards and an exclusivity provision requiring BBW to route designated OMS activities through Radial during the contract term. Radial Am. Compl. ¶¶ 20-24, 29, 36, 56-60. The Agreement includes:

- Section 4.4, which contemplates written notice and escalation through executives and general counsel before either party "pursue[s] any remedy . . . at law or in equity" for a contractual dispute (Agreement at 3, Dkt. No. 75);

- Section 11.2, which allows termination for uncured material breach (Radial Am. Compl. ¶ 27);

- Section 11.4, which defines a "Service Level Standard Failed Month" and a "Service Level Termination Event," and permits BBW, at its option, to terminate upon a specified number of failed months within a twelve-month period (Agreement at 4, Dkt. No. 75);

- Addenda governing the ten-year term of the Atlanta Fulfillment Center, transition obligations upon termination, and the OMS (Radial Am. Compl. ¶¶ 31-43);

- Addendum No. 5, which extended the OMS term to August 31, 2026 and contemplated a future OMS migration with Radial's cooperation in transitioning BBW off the OMS (Addendum No. 5, Dkt. No. 75-2); and

- Addendum No. 11, which granted BBW a conditional early termination right for 2025 dependent on Radial's performance against defined 2024 peak-season benchmarks and required BBW to ship certain volumes through the Atlanta Fulfillment Center and provided BBW with credits (Addendum No. 11, Dkt. No. 75-4).

Radial pleads the parties negotiated benchmarks and a credit arrangement that Radial satisfied, including operational investments at the Atlanta Fulfillment Center. Radial Am. Compl. ¶¶ 31-37, 40. Radial then alleges, despite those benchmarks, BBW issued a written notice in early January 2025 purporting to terminate Atlanta fulfillment and transportation services effective sixty days later. *Id*. ¶¶ 44-46. Radial contends no contractual "service level termination event" occurred and BBW's notice therefore constituted breach and anticipatory breach. *Id*. ¶¶ 47, 69-73. Radial also alleges BBW violated the OMS exclusivity agreement by engaging alternative OMS services before contract expiration. *Id*. ¶¶ 76-79.

BBW disputes that framing. BBW alleges Radial's performance at the Atlanta Fulfillment Center deteriorated, forcing BBW to incur substantial costs and undertake contingency measures. BBW Am. Countercl. ¶¶ 23-47. BBW alleges it exercised a contractual termination right for Radial's failures, after which Radial escalated the business dispute by filing a lawsuit. *Id*. ¶¶ 60, 81-83.

BBW's counterclaims also focus on two operational issues. First, BBW alleges that after it issued the termination notice, Radial refused to release BBW-owned inventory stored at the Atlanta Fulfillment Center unless BBW settled in the broader dispute. *Id*. ¶¶ 101-113. BBW alleges Radial's withholding caused loss of use and decrease in value of the inventory due to its shelf life limits and seasonality even though the inventory was later transferred under a transfer agreement in March 2025. *Id*. Second, BBW alleges Radial refused to "work together in good faith" to facilitate transition of OMS services and refused to allow reasonable pre-expiration testing of a successor OMS, in violation of contract language BBW reads to require transition planning at least six months before the August 31, 2026 OMS end date. *Id.* ¶¶ 151-188.

Radial filed this action in this District on February 3, 2025. In its amended complaint, Radial asserts claims for declaratory judgment (Count I), breach of contract for BBW's termination notice (Count II), breach of contract for the OMS (Count III), fraudulent inducement (Count IV), breach of the implied covenant of good faith and fair dealing (Count V), and unjust enrichment (Count VI). Radial Am. Compl. ¶¶ 61-99. BBW later filed a related action in the Northern District of Georgia, which was transferred to this District on May 8, 2025. On June 18, 2025, the Court consolidated the cases for all purposes under this lead docket and directed BBW's claims proceed as counterclaims. Dkt. No. 42. In its counterclaims, BBW asserts claims for breach of contract for Radial's failure to transition (Count I), conversion (Count II), trover (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), unjust enrichment (Count V), breach of contract (Counts VI-VII), promissory estoppel (Count VIII), willful misconduct (Count IX), gross negligence (Count X), and declaratory judgment (XI). BBW Am. Countercl. ¶¶ 192-305.

BBW moves to dismiss Radial's amended complaint in its entirety, and Radial moves to dismiss Counts II, III, and VIII-XI of BBW's amended counterclaims. BBW Mot. Dismiss 1, Dkt. No. 17-2; Radial Mot. Dismiss 1, Dkt. No. 45-2 (Civil Action No. 25-cv-2282).

**LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In evaluating the motion, the court must separate the legal and factual elements of the

plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court accepts well-pleaded facts as true and draws reasonable inferences in the nonmovant's favor, but it does not credit legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). The court may also consider "exhibits attached to the complaint," "matters of public record," and documents "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Fraud claims must also satisfy Federal Rule of Civil Procedure 9(b), which requires the plaintiff to plead the circumstances of fraud with particularity. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). The "plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation" to satisfy this standard. *Id.*; *see also United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (requiring "the who, what, when, where, and how" of the alleged fraud).

## DISCUSSION[1]

### A. BBW's Motion to Dismiss Radial's Amended Complaint

Radial seeks a declaration that BBW's termination notice was contractually impermissible and that BBW remains bound to perform (Count I). Radial Am. Compl. ¶¶ 61-67. BBW argues the declaratory claim is duplicative of Radial's breach claims and should be dismissed as improper under the Declaratory Judgment Act, 28 U.S.C. § 2201. BBW Mot. Dismiss 5-7.

---

[1] The parties' contract-based claims under the Agreement are governed by New York law. *See* BBW Am. Countercl. ¶ 21; Radial Mot. Dismiss 10-11. Therefore, the Court applies New York substantive law to claims that seek to enforce contractual rights and obligations or that are dependent on the agreement's terms (including implied covenant and quasi-contract theories premised on the same subject matter).

BBW's inventory-based tort claims, however, are governed by Georgia law. *See* BBW Am. Countercl. ¶¶ 200-215; Radial Mot. Dismiss 1. Those claims concern alleged dominion over goods stored at the Atlanta Fulfillment Center. The Court therefore applies Georgia substantive law to the conversion and trover counts.

A district court has discretion to decline declaratory relief when a declaration would not meaningfully clarify the parties' legal relations or would function as a redundant vehicle for contract adjudication. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995) (recognizing broad discretion to stay or dismiss declaratory actions in light of practical considerations); *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196-97 (3d Cir. 2021) (identifying non-exclusive factors that guide whether declaratory relief would serve a useful purpose, including "avoidance of duplicative" claims).

Count I of Radial's complaint tracks the same core issue presented in its breach claim based on the termination notice: whether BBW possessed a contractual right to terminate Atlanta services and whether issuing the notice breached the Agreement. Success on Count I would add no independent declaration beyond relief available through adjudication of the breach claim. *See Siegel v. Goldstein*, 657 F. Supp. 3d 646, 662 (E.D. Pa. 2023) (finding dismissal of a declaratory judgment claim is warranted when it "duplicate[s] other claims"). The Court will therefore dismiss Count I with prejudice as duplicative.

Turning to the breach of contract claims (Counts II and III), BBW argues Section 4.4 required Radial to provide written notice and complete escalating meetings before pursuing legal remedies and Radial did not plead compliance with Section 4.4. BBW Mot. Dismiss 7-9. Radial responds BBW's own conduct constituted a prior material breach, thereby excusing any obligation in the dispute process set out in Section 4.4. Radial Opp'n 8-10, Dkt. No. 30. At this stage, the Court cannot resolve this issue as a matter of law.

Under New York law, express conditions precedent are enforced according to their terms and strict compliance is required. *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690-91 (1995); *Pike Co., Inc. v. Tri-Krete Ltd.*, 772 F. Supp. 3d 353, 369-70

(W.D.N.Y. 2025). But that principle does not resolve the present motions. The parties dispute whether Section 4.4 is properly construed as a mandatory pre-suit condition precedent for the claims asserted here, whether any contractual carveout applies, when the relevant dispute arose, and whether BBW's alleged prior breach or repudiation excused further resort to the contractual dispute process. *See Exch. Listing, LLC v. Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 145 (S.D.N.Y. 2023) (holding that when a defendant commits an anticipatory repudiation, the non-repudiating party "may . . . 'elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties'"); *Temple Univ. Hosp., Inc. v. Grp. Health, Inc.*, Civ. No. 05-102, 2006 WL 146300, at *5-7 (E.D. Pa. Jan. 12, 2006) (applying New York law to deny a motion to dismiss because "a prior breach of the contract may nullify the [dispute resolution] procedure"). Those questions turn on the text of Section 4.4 and the sequence and nature of the parties' conduct.

At this stage, the Court cannot resolve factual disputes about whether either party's alleged breach excused strict compliance with Section 4.4. BBW's argument relies on a particular construction of Section 4.4 and its carveouts, in addition to assumptions about when the dispute arose and whether the clause was triggered. *See Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 637-38 (E.D.N.Y. 2018) (denying motion to dismiss breach of contract claim because a factual dispute was not suitable for resolution at pleading stage).

On a motion to dismiss, the Court must draw reasonable inferences in Radial's favor. Radial alleges BBW issued a termination notice that was contractually unauthorized and thereby materially breached or repudiated the Agreement. Accepting those allegations as true for present purposes, the Court cannot conclude on the pleadings alone that Radial's claims are barred for

failure to satisfy Section 4.4. BBW may renew this argument on a more developed record. The Court will therefore deny BBW's motion to dismiss Counts II and III without prejudice.

As to the fraudulent inducement claim (Count IV), Radial alleges that during negotiations leading to Addendum No. 11, BBW represented that it would continue using Radial's Atlanta Fulfillment Center if Radial satisfied the negotiated 2024 peak-season benchmarks, while allegedly concealing that it had already decided to terminate the relationship regardless of Radial's performance. Radial Am. Compl. ¶¶ 82-86. Radial further alleges it relied on those representations by agreeing to credits and making operational investments it otherwise would not have made. *Id.* BBW argues the claim fails because Radial pleads only "commercial desire," not actionable misrepresentation, and the fraud theory is duplicative of Radial's contract claims. BBW Mot. Dismiss 9-11; BBW Reply Supp. 5-6, Dkt. No. 31. Radial responds it has identified the time period (the 2023-24 negotiations leading to Addendum 11), the context (peak-season performance negotiations), the nature of the misrepresentations (promises to continue the relationship if benchmarks were met), and the alleged falsity (BBW's hidden intention to terminate regardless of performance). Radial Opp'n 11-12.

At this stage, Radial's allegations are sufficient to satisfy Rule 9(b). The Amended Complaint identifies the negotiating context, the approximate period in which the alleged statements were made, the substance of the alleged misrepresentations, the parties involved in the negotiations, and the reason the statements were allegedly false when made. That is enough, at least for present purposes, to provide BBW fair notice of the "who, what, when, where, and how" of the alleged fraud. *See UPMC*, 946 F.3d at 176.

Count IV is also not duplicative of Radial's breach claims at this stage. Fraudulent inducement claims may coexist with contract claims where the alleged misrepresentations are

8

collateral to the contract and concern the promisor's intent at the time of contracting, not merely its later failure to perform. *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 263-65 (S.D.N.Y. 2005) (citing *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (1994) and *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992)). Radial's theory is not simply that BBW later breached Addendum No. 11. It is that BBW entered the addendum after falsely representing its then-present intention to continue the relationship if Radial met the negotiated benchmarks, in order to secure credits and investments from Radial. Whether discovery substantiates that theory is a separate question. For now, Count IV survives.

Turning to the implied covenant of good faith and fair dealing (Count V), Radial alleges BBW exercised its termination rights in bad faith by invoking Section 11.4 as a pretext to circumvent the carefully negotiated structure of termination rights after Radial provided credits and invested in peak-season performance. Radial Am. Compl. ¶¶ 88-95. BBW argues Count V is duplicative of Radial's breach claims. BBW Mot. Dismiss 11-13.

Every contract, under New York law, contains an implied covenant of good faith and fair dealing, which is breached when a party acts in a manner that, although not expressly forbidden, deprives the other of the "fruits of the contract." *Est. of Hammond v. Fuchs*, 804 F. Supp. 3d 440, 456 (S.D.N.Y. 2025) (quoting *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)). An implied covenant claim, however, cannot be inconsistent with express contract provisions. *Mancini v. UBS AG, New York Branch*, 757 F. Supp. 3d 571, 579 (S.D.N.Y. 2024). An implied covenant claim must be "dismissed as duplicative" when it is based on the same facts as a breach of contract claim and seeks the same damages. *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 37 (S.D.N.Y. 2017).

Radial's implied covenant theory is that BBW invoked the Agreement's termination provisions in bad faith and thereby deprived Radial of the benefit of its bargain. But that theory does not identify conduct distinct from the conduct underlying Count II: the allegedly unauthorized termination of Atlanta services. Nor does Count V seek damages different from those sought for breach. The implied covenant claim therefore adds no independent basis for relief and will be dismissed with prejudice as duplicative.

Finally, BBW moves to dismiss Radial's unjust enrichment claim (Count VI) on the ground that valid contracts govern the parties' relationship. BBW Mot. Dismiss 13-14. Radial alleges BBW received substantial credits and other benefits associated with the Atlanta Fulfillment Center and Addendum 11, while simultaneously seeking to terminate in a manner that, if found to violate the parties' agreements, would render BBW's retention of those benefits unjust. Radial Am. Compl. ¶¶ 97-99. Radial argues Count VI is properly pled in the alternative in the event any contract or provision is found unenforceable. Radial Opp'n 11-12.

Where an enforceable contract governs the subject matter of the dispute, New York law generally bars unjust enrichment recovery for the same conduct. *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000) (finding unjust enrichment is "ordinarily unavailable when a valid and enforceable contract governing the same subject matter exists"). Courts permit alternative pleading of unjust enrichment claims only where there is "a bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue." *Spinal Techs., LLC v. Mazor Robotics Inc.*, 624 F. Supp. 3d 330, 344 (W.D.N.Y. 2022) (quotations and citations omitted). Courts dismiss unjust enrichment claims that merely "repackage the same allegations as those pleaded elsewhere in the complaint." *In re Chantix*

*(Varenicline) Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 735 F. Supp. 3d 352, 401 (S.D.N.Y. 2024) (citation modified).

There is no genuine dispute as to the contract's existence or validity here. Both sides rely on the Agreement and its addenda as the source of their rights and obligations concerning the Atlanta Fulfillment Center, the credits, the performance benchmarks, and the asserted termination rights. Radial's unjust enrichment claim seems to repackage its contract theory in quasi-contract language. Its breach of contract claim (Count II) and unjust enrichment claim rise and fall together. If BBW is not found to have terminated the contract in violation of Addendum 11 and the early-termination provision, then both the breach of contract and unjust enrichment claims fail. The unjust enrichment claim is therefore duplicative of the breach claim. *See Eng. v. Danone N. Am. Pub. Benefit Corp.*, 678 F. Supp. 3d 529, 540 (S.D.N.Y. 2023) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."). Count VI will therefore be dismissed with prejudice.

In sum, BBW's motion is granted as to Counts I, V, and VI and denied as to Counts II-IV.

### B. Radial's Motion to Dismiss BBW's Amended Counterclaims

BBW's amended counterclaims assert claims for conversion (Count II) and trover (Count III). BBW alleges it retained title to the inventory stored at the Atlanta Fulfillment Center, demanded return of that inventory after the parties' dispute escalated, and Radial refused to release it unless BBW agreed to a broader settlement. BBW Am. Countercl. ¶¶ 201-215. BBW further alleges the inventory was seasonal or perishable in the relevant sense and the delay caused loss of use and diminution in value before the inventory was ultimately transferred. *Id.* Radial argues the claims are barred because of the March 3, 2025 transfer agreement, which governs Radial's

11

obligation to return the inventory, and BBW cannot show recoverable damages because Radial has returned the goods. Radial Mot. Dismiss 6-9.

Under Georgia law, conversion is an "unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights," and trover is a closely related statutory action. *Decatur Auto Ctr. v. Wachovia Bank, N.A.*, 583 S.E.2d 6, 7-8 (Ga. 2003) ("Conversion is a tort for which the action of trover is maintainable."); *see also Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 769 (Ga. Ct. App. 2001) ("[A]n action for conversion . . . constitutes the election of money damages . . . in a trover action."); Ga. Code Ann. § 44-12-151. To establish a conversion claim, "a plaintiff must demonstrate that (1) [it] owns title to or has the right to possess the personal property at issue; (2) the defendant actually possesses the property; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return it." *Sterling Planet, Inc. v. GRP Holdco, LLC*, 913 S.E.2d 881, 889 (Ga. Ct. App. 2025) (quotations and citation omitted). Return of property may limit remedies, but it does not defeat a claim for conversion and trover. *See Lamb v. Salvage Disposal Co. of Georgia*, 535 S.E.2d 258, 261 (Ga. Ct. App. 2000) (finding that, when "the property has been returned . . . the damages are limited to recovery for the alleged diminution in value of the property only for the time period between the alleged conversion and the property's return"); *Amegy Bank Nat. Ass'n v. Deutsche Bank Alex.Brown*, 619 F. App'x 923, 933 (11th Cir. 2015) (same).

At the pleading stage, BBW has adequately alleged ownership, wrongful dominion, refusal to return upon demand, and damages. The amended counterclaim alleges BBW always retained title to its inventory stored at the Atlanta Fulfillment Center, Radial refused to release that inventory upon demand unless BBW agreed to a global settlement, and this wrongful retention caused damages in the form of loss of use and diminution in value. The eventual return of the

12

inventory limits BBW's damages but does not bar the claims for conversion and trover. Nor can the Court conclude on the pleadings alone that the March 3, 2025 transfer agreement displaces tort remedies entirely. BBW alleges not merely a dispute about performance timing under a contract, but that Radial withheld concededly BBW-owned goods as leverage to extract unrelated settlement concessions. That is enough to survive dismissal. Radial's motion, therefore, will be denied as to Counts II and III.

BBW's promissory estoppel claim (Count VIII) is based on Radial's alleged commitments to cooperate on OMS transition. BBW Am. Countercl. ¶¶ 268-276. BBW asserts these commitments are distinct from and not fully reflected in the written agreements. BBW Opp'n 6-8, Dkt. No. 51 (Civil Action No. 25-cv-2282). Radial argues Count VIII is unavailable because the written agreements cover the subject matter of OMS transition. Radial Mot. Dismiss 9-10.

Under New York law, promissory estoppel requires allegations of (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on the promise by a party; and (3) injury caused by the reliance. *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.*, 804 F.2d 787, 793 (2d Cir. 1986). Promissory estoppel, however, is generally unavailable where a valid contract governs the same subject matter as the alleged promise. *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987) (barring quasi-contract theories when a contract covers the dispute); *Goldberg v. Pace Univ.*, 88 F.4th 204, 214-15 (2d Cir. 2023) (same). It may be pled in the alternative only if "there is 'a dispute over the existence, scope, or enforceability of the putative contract.'" *Goldberg*, 88 F.4th 204 at 215 (quoting *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 263 (2d Cir. 1999)).

BBW's promissory estoppel claim is based on Radial's alleged commitments to cooperate on OMS transition testing—conduct BBW also grounds in the Agreement's transition language

13

(Addendum No. 5) and its contract claims. On the pleadings, BBW does not plausibly allege a clear, extra-contractual promise that is meaningfully distinct from the parties' negotiated transition obligations. *See Benefitvision Inc. v. Gentiva Health Servs., Inc.*, No. 09-CV-0473, 2014 WL 298406, at *9 (E.D.N.Y. Jan. 28, 2014) ("A promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract." (quotations and citation omitted)). And, Radial does not challenge the enforceability or existence of written agreements concerning OMS transition. *See Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 681 F. Supp. 3d 81, 99-100 (S.D.N.Y. 2023) (dismissing a promissory estoppel claim as duplicative because the enforceability of the contract was not at issue). The Court will therefore dismiss Count VIII with prejudice.

BBW pleads willful misconduct (Count IX) and gross negligence (Count X) based on Radial's alleged transition obstruction and leverage tactics. BBW Am. Countercl. ¶¶ 279-293. Radial argues Counts IX and X simply relabel contract breaches in tort language. Radial Mot. Dismiss 10-13.

Under New York law, gross negligence requires "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc.*, 786 F. Supp. 2d 798, 807 (S.D.N.Y. 2011) (quotations and citations omitted). The "act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care." *Id*. Willful misconduct is "wrongful conduct in which [a party] willfully intends to inflict harm on [the other party] at least in part through means of breaching the contract between the parties." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 138 (2d Cir. 2016) (quoting *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 438 (1994)).

14

Here, BBW alleges more than ordinary nonperformance. It asserts Radial: (1) initially agreed to and began cooperating with OMS transition (including meeting with the successor OMS vendor) but then abruptly refused to cooperate; (2) did so despite knowing that OMS transition would take more than a year and any delay would threaten BBW's ability to operate its e-commerce site during the 2026 holiday peak season; and (3) used its withholding of cooperation, along with its withholding of inventory, as leverage to extract settlement concessions. These allegations, if proven true, could support a finding of conduct approaching intentional wrongdoing or reckless disregard of a known, substantial risk of harm. At this stage, BBW has plausibly alleged more than a mere failure to perform under the Agreement. Radial's motion will be denied as to Counts IX and X.

Finally, BBW seeks declarations (Count XI) that Radial must cooperate with successor OMS testing "at least six months, or as soon as possible," before August 31, 2026, and that refusal by Radial would constitute willful misconduct and gross negligence. BBW Am. Countercl. ¶¶ 295-305. Radial argues Count XI is unripe because it seeks relief for speculative future harms and is duplicative. Radial Mot. Dismiss 13-15.

A declaratory claim is justiciable where it presents a concrete dispute over present rights and obligations under a contract, even if performance will continue into the future. *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 410-12 (3d Cir. 1992) (explaining that "to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" (quotations and citations omitted)); *see also Sherwin-Williams Co. v. Cnty. of Delaware, Pennsylvania*, 968 F.3d 264, 269 (3d Cir. 2020) (stating that when

15

presented with declaratory claims, courts "may review only concrete legal issues, presented in actual cases, not abstractions").

Count XI is justiciable in part. BBW alleges a present and ongoing dispute over Radial's current obligations to assist with successor OMS transition before the August 31, 2026 end date. According to BBW, transition planning and testing must begin well in advance of that date to avoid operational disruption during a critical retail period, and Radial has already refused to provide the cooperation BBW contends the Agreement requires. On these allegations, the controversy is not merely speculative or hypothetical. It is a live dispute. BBW has already begun transition planning, Radial has allegedly repudiated its cooperation obligations, and the 2026 peak season is around the corner. A declaration regarding the parties' respective rights and obligation with respect to the OMS transition under the Agreement could "serve a useful purpose in clarifying and settling the legal relations in issue" and provide relief from present uncertainty. *Nationwide Mut. Fire Ins. Co. v. Salkin*, 163 F. Supp. 2d 512, 515 (E.D. Pa. 2001). Nor is Count XI clearly duplicative at this stage. It focuses specifically on the forward-looking OMS transition and the scope of Radial's obligations in light of the Agreement and alleged promises. Although there is some overlap with BBW's breach claims, Count XI may aid in structuring relief and guiding the parties' conduct before irreparable harm occurs. *See Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 145-47 (3d Cir. 2014) (directing courts to consider whether a declaration would serve a useful purpose). The Court will deny Radial's motion as to the cooperation and testing portion of the declaratory claim.

BBW's request for a declaration that future refusal by Radial would constitute willful misconduct and gross negligence, however, stands on a different footing. That request is not appropriate for declaratory judgment because it asks the Court to render an advisory opinion about hypothetical future conduct and future torts. This request lacks the imminency required for

declaratory relief. *See Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647-52 (3d Cir. 1990) (rejecting declaratory relief where the controversy lacks sufficient imminency). The Court dismisses this portion of the declaratory claim.

In sum, Radial's motion is granted as to Count VIII and denied as to Counts II, III, IX, and X. The motion is granted in part and denied in part as to Count XI.

**CONCLUSION**

In conclusion, BBW's motion to dismiss Radial's amended complaint is granted as to Counts I, V, and VI and denied as to Counts II, III, and IV. Radial's partial motion to dismiss BBW's amended counterclaims is granted as to Count VIII and denied as to Counts II, III, IX, and X. As to Count XI, Radial's motion is denied to the extent it seeks dismissal of a declaration that Radial must cooperate with BBW's successor OMS testing and granted to the extent it seeks dismissal of a declaration that refusal by Radial to cooperate would constitute willful misconduct and gross negligence.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.